## THE PALESTINE, BRAFFETSVILLE, NEW PARIS AND NEW WEST-VILLE TURNPIKE COMPANY v. WILLIAM WOODEN.

The stockholders in a turnpike company, incorporated prior to the adoption of
the constitution of 1851, are individually liable under the act of May 3, 1852,
"defining the powers of plank and turnpike road companies" (3 Curwen's
Stat. 1869), only for the payment of such bonds of the company as are issued
"for the purpose of raising money with which to construct the road of such
company," or some part thereof; and not for the payment of such bonds as
are issued for the payment of indebtedness of the company then existing;
and an assessment of shareholders, in the manner pointed out by the act
of April 8, 1856, "for the relief of certain turnpike and plankroad compa-
nies" (4 Curwen's Stat. 2756), for the payment of both the above-mentioned
classes of bonds, is unwarranted by law.

ERROR to the court of common pleas of Darke county.
Reserved in the district court.

The original action was brought January 27, 1857, by
the present plaintiff in error, against the defendant in error
before a justice of the peace of Darke county, and thence ap-
pealed to the common pleas, where the case was disposed of
on demurrer to petition.

The petition filed in the common pleas February 11, 1858, reads as follows :

" This cause comes here by appeal; and the plaintiff says that, on or about the ———— day of ————, A. D. 1849, it became chartered by the legislature of the State of Ohio, by the name aforesaid; that afterward, having received subscriptions of stock to the amount of $10,000, as required by charter, it became organized on the third day of January, 1852, by the election of directors and other officers, and proceeded to the·construction of the road from Palestine, Darke county, Ohio, toward New Westville, in Preble county, Ohio ; that the said plaintiff continued to progress with the work until the month of June, 1854, by which time it had expended all the money collected from stockholders, and had also incurred a large *bona fide* indebtedness, which was, at that time, actually expended and invested in the construction of said road, and the same was incomplete between said town of Palestine and New Paris; that the board of directors, being unable to progress without means, and being anxious to complete the road between the two points last mentioned, determined to avail the company of the provisions of the act of May 3, 1852, authorizing turnpike and plank-road companies to issue the bonds of such companies to the amount, including such indebtedness, of one half of the capital stock actually paid in, and expended in the construction of said road, said bonds to be issued under certain restrictions contained in, or prescribed by, said act.

" Plaintiff further says, that the said board of directors, afterward, on the 25th day of June, 1854, at a meeting of the board, made an exhibit and statement, showing that the amount of stock subscribed and paid in, and expended in the construction of said road, including the *bona fide* indebtedness of the company incurred in constructing said road, amounted to about $13,899.52; that, upon such showing being made, the said board of directors, on the same 26th day of June, 1854, by resolution passed at said meeting, determined to issue the bonds of the company to the amount of $6000, in bonds not less than $100 each, to be paid in twenty

four months from date, with ten per cent. interest; which bonds were issued accordingly, and sold to diverse persons, *and the proceeds applied to the discharge of said bona fide indebtness of the company, and the completion of the road between Palestine and New Paris, aforesaid,* and by means of which, the said road was completed between the said points, gates for the collection of toll established, but, after expending the amount so received for bonds, and the additional amounts received for the stock subscribed, it still left the company indebted to a considerable amount.

"Plaintiff further says, that after said bonds had become due, the said company was unable to meet and pay the same, and at a meeting of the board of directors of said company, held on the 26th day of August, 1856, it was resolved that the stockholders of said company be notified to convene at Braffetsville, Darke county, Ohio, on the line of said road, on the 4th day of October, 1856, for the purpose of having submitted to them a detailed statement showing the assets and indebtedness of the said company, and determining upon a basis for assessing shareholders, *to meet the indebtedness of the company,* and fixing the time or times and mode for the payment of the amounts assessed against each individual or corporation, as required by the act of April 8, 1856. That, in pursuance of the said resolution, more than thirty days' previous notice was given by publication of the time and place of such meeting in the Greenville Journal, Darke County Democrat, Eaton Democrat and the Eaton Register, being all the newspapers published in Darke and Preble counties, in which the road is located. That in pursuance of such notice, there was a meeting of the stockholders held at the time and place above stated, at which meeting there was exhibited to said stockholders a detailed statement, showing the assets and stock of the company to be $13,086.40, and the indebtedness (including interest) of the company to be $12,975.56. That upon such statement being read, exhibited to the stockholders there assembled, on motion, the following resolution was adopted unanimously by the stockholders:

" *Resolved*, That the stockholders of the Palestine, Braf-fetsville, New Paris and New Westville Turnpike Road Company, do hereby establish, as a basis for assessing the stockholders to meet the indebtedness of the said company, and fix the times following for the payment of the amount assessed against each individual stockholder, as follows : that is to say, twenty per cent. on the capital stock by us owned at the time such indebtedness was created, to be paid to the treasurer of said company on or before the first day of December, 1856 ; and the like sum of twenty per cent. every sixty days thereafter, until the sum collected shall be equal to the capital stock by us owned as aforesaid, if so much be necessary *for the payment of such indebtedness*, provided the amount assessed against us respectively, is not to exceed the amount of the capital stock so owned by us as aforesaid ; and that thirty days' notice of the time of payment be given in the same manner as was required by law for the collection of the original capital stock subscribed to said company."

" That in pursuance of said resolution, notice was published for more than thirty days previous to the first day of December, 1856, in the Eaton Register, and Darke County Democrat, notifying and requesting the stockholders to pay such assessments, in conformity with the above resolution, which assessments, the plaintiff says it had the right to make and collect under the said charter, and laws of the state.

" The plaintiff further says, that the said William Wooden, was one of the original stockholders in said road, and a member at the time of the organization thereof; that at the time the said indebtedness of the company was created, the said Wooden was the owner of twelve shares of the capital stock of said company, amounting in the aggregate to $300. That after the time for the payment of the first assessment of twenty per cent. had elapsed, to-wit : December the 1st, the plaintiff, by its agent, demanded payment of the said sum of twenty per cent., being in the aggregate $60, of and from the said Wooden, which the said Wooden refused to pay.

"Wherefore a right of action accrued in favor of the plaintiff and against the defendant, for the said sum of $60, with interest from December 1, 1856," for which judgment is asked.

The defendant demurred to this petition, on the alleged grounds:

1st. That it appears from the petition that the plaintiff has no legal capacity to sue in this action.

2d. That it appears from the said petition, that the bond-holders to whom the bonds referred to in the petition were sold, should be made parties plaintiff in this action.

3d. That the petition does not state facts sufficient to constitute a cause of action.

This demurrer was sustained by the common pleas, at its July term, 1858, and judgment entered against the plaintiff, for costs. The plaintiff excepted, and to reverse this judgment of the common pleas, filed a petition in error in the district court of Darke county, insisting that the common pleas erred in sustaining the demurrer and rendering judgment against the plaintiff.

At its May term, 1859, the district court reserved the cause to this court for decision.

*Ranney, Backus & Noble*, for plaintiff in error:

The petition certainly might have been made more specific, and it might not have stood against a motion to make it so. But we claim it shows a substantial right of action, and that the demurrer should have been overruled. In the absence of any certain information, we suppose the validity of this legislation, as against the defendant, is intended to be denied; and that this is the only question in the case.

With a view to previous decisions of this court, it need not be denied, that this corporation could have been organized after the adoption of the present constitution, without subjecting the shareholders to private liability. The act of 1852, when adopted by the corporation, and acted upon, operated an amendment of its original charter, and extended its powers. Where an amendment of this character is proffered

to an existing coporation, it is settled that the shareholders are bound by an acceptance, or any conduct amounting to an acceptance, on the part of the directors. Ang. & Ames on Corp., sec. 84; *Lin. & Ken. Bank* v. *Richardson,* 1 Greenl. Rep. 70. And this, upon the principle that the directors are constituted the lawful and competent agents of the stock holders for this purpose. And when an amendment is thus accepted, it must be taken as it is offered, and without con- dition. There can be no *partial* acceptance. Ang. & Ames on Corp., sec. 85. *Green* v. *Seymour,* 3 Sand. Ch. 285; *Rex* v. *Cambridge,* 3 Buss. 1656.

It is true, it is not expressly averred in the petition, that the defendant assented to the amendment and to the issue of the bonds, under it; but he is presumed to have done so, and no such averment was necessary. In *Martin* v. *Pensacola, etc., R. R.,* 8 Florida Rep. 370, after a very thorough examination of the whole subject, it was expressly held that " to constitute this a good defense, the defendant must show affirmatively that he dissented from such an alteration in a reasonable time, before any debts had been contracted, or rights had accrued to third parties, under such alteration; and it is not incumbent upon the corporation to show his assent in order to be able to maintain his action."

The whole subject is also very ably examined in the case of *Zabriskie* v. *C. C. & C. R. R. Co.;* 23 How. U. S. R. 381. In that case, the corporation had exercised powers in the guaranty of bonds which required the *express previous* consent of the stockholders; and yet, without such consent, the bonds were sustained, and the court expressly held that " a corporation can not, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct has superinduced." The whole body of the stockholders, under the provisions of the act of 1856, were called upon to act in fixing the basis of the assessment, and the averment is that they did act. If *the* stockholders did act, the defendent as one of them acted, and in the absence of any showing to the contrary, he is presumed to have done so. It may not be doubtful that the de-

fendant, by acting promptly, might have enjoined the corporation from exercising these powers; but our point is, that he could not lie by and interpose no obstacle to the circulation and sale of these bonds, and then repudiate the liability which the law had imposed upon him.

*Robert Miller,* for defendant in error:

1. The petition fails to show that the charter, under which the company organized and exercised its franchise, and under which the defendant subscribed his stock, provided for any individual liability of the stockholders, or that the legislature reserved any right subsequently to alter or amend the same.

2. The act of May 3, 1852, " defining the powers of plank and turnpike road companies," being passed subsequent to the granting of the charter and organizing of the company, and of the subscription of the defendant, of his stock, can not have the effect of making the stockholders subject to its provisions, unless the same was duly accepted by them as an amendment to the charter, or, at least, unless it be shown that the stockholder or stockholders sought to be held, affirmatively assented to the issue of the bonds provided for by said act.

3. The petition shows that the stockholders have been assessed to pay the *general total indebtedness* of the company, existing on October 4, 1856; amounting to $12,975.56, which amount largely exceeds the amount that was then due upon the class of bonds issued by the company on the 26th June, 1854, for the payment of which the 2d section of the act of 1852, declares the stockholders individually liable, whereupon the assessment is excessive, illegal and void.

4. The act of April 8, 1856, does not attempt to create or extend the individual liability of the stockholders in turnpike and plankroad companies, and hence does not aid the company, or assist it in assessing the stockholders for an amount " beyond the sum fixed by the *charter* of the company ;" nor does it attempt to extend the liability supposed to have vested under the act of 1852.

5. The said act of 1856 has no reference to companies

27

issuing bonds under the act of 1852, and hence no authority exists for the assessing the stockholders in this company, at all.

6. The bondholders are the only parties who can resort to the personal estate of the stockholders for the payment of the bonds issued under the act of 1852; and they can not do so, until after exhausting the corporate assets and franchises subject to execution.

7. The bonds issued under the act of 1852, are void, because they were not limited to the proper object and amount· and they were made to bear a greater rate of interest than was provided by law, for turnpike and plankroad companies.

8. The act of 1852, if construed to authorize the directors, without an acceptance of the act by the stockholders, or their assent, to the issue of the bonds authorized by said act, and thereby bind them individually for their payment, is unconstitutional and void.

BRINKERHOFF, J.—This turnpike company having been chartered prior to the adoption of the present constitution of the state, its stockholders are not subject to the individual liability imposed by that instrument upon stockholders of corporations; nor is any such liability, other than for the payment of their stock subscriptions, claimed by the plaintiff to have been imposed upon them by any law prior to the passage of the act of May 3, 1852, " defining the powers of plank and turnpike road companies." 3 Curwen's St. 1869. That act provides:

SEC. 1. " That it shall and may be lawful for any plankroad or turnpike company, heretofore chartered under the laws of this state, *for the purpose of constructing any road authorized by their respective charters, and to provide for any present indebtedness which may exist against said companies respectively*, to issue the bonds of such company, to the amount, including such indebtedness, of one half of the capital stock of said company actually paid in, and expended in the construction of such road; said bonds to be issued in such sums and in such forms as the board of directors of said

several companies may each prescribe, and to bear interest and become payable at such time or times, and place or places, as they may severally designate; and for the redemption of which the faith of said several companies are hereby respectively pledged, together with the property, rights and franchises thereunto belonging, and which said' bonds shall not be subject to a higher rate of interest than that provided by law : Provided, that nothing herein contained shall be so construed as to authorize bonds to be issued of a less denomination than one hundred dollars, or in the similitude of bank notes  designed to circulate as money."

SEC. 2.  "That the stockholders of any company which shall issue bonds under the authority of this act, *for the purpose of raising money with which to construct the road of such company*, or any part thereof, shall be each individually liable for the payment of *such bonds*, over and above the stock by such stockholder owned, to a sum at least equal in amount to the stock owned by each, at the time the indebtedness on account of *said* bonds shall be created."

SEC. 3.  "That any company that shall avail itself of the provisions of this act, shall be governed by and be subject to the provisions of any general law that may hereafter be passed  for the incorporation of turnpike and plankroad companies."

The subsequent act of April 8, 1856, "for the relief of certain turnpike and plankroad companies," 4 Curwen's St. 2756, provides :

SEC. 1.  " *That where the shareholders of any turnpike or plankroad company are individually liable for the liabilities of such company*, the proportion that each shareholder shall be required to pay to meet existing liabilities may be determined and collected in the manner provided by this act."

SEC. 2.  "The directors of any such company, desiring to avail themselves of the provisions of this act, shall give notice to the shareholders for a meeting of the stockholders, specifying the time and place of meeting, and the object thereof."

SEC. 3. "At such meeting, a detailed statement shall be submitted, showing the assets and indebtedness of such company."

SEC. 4. "A majority of the stockholders at such meeting may determine upon the basis for assessing the shareholders to meet the indebtedness of such company, and fix the time or times and mode for the payment of the amount assessed against each individual or corporation."

SEC. 5. "No one shall be liable beyond the sum fixed by the charter of such company, nor shall any one be so liable unless he was the owner of stock in such company at the time such indebtedness was contracted."

SEC. 6. "Any shareholder failing to pay as required the amount so assessed, shall be liable to an action in the name of such company, for the recovery thereof, as in other cases of indebtedness."

SEC. 7. "The notice required by this act shall be given by publication, for at least thirty days, in all the newspapers published in the counties in and through which the road of such company may be located."

The mode of making assessments directed by this act, seems, from the allegations of the petition, to have been regularly followed in making the assessments which this action seeks to enforce. And no question is made as to the regularity of the mode of making the assessments; but the *right* to make them is denied. And this leads us to a more careful scrutiny of the language of the acts above quoted.

. The first section of the act of 1856, last above quoted, provides only " that where the shareholders of any turnpike or plankroad company *are individually liable* for the liabilities of such company," he may be assessed in the manner pointed out by that act. Not the indebtedness of the company alone, but the individual liability of the stockholder *for* such indebtedness, is the prerequisite to a rightful assessment under this act. What, then, is the individual liability for the enforcement of which assessments may be made under this act? To determine this question, we must recur to the act of 1852, first above quoted.

By the provisions of the first section of this act, it will be seen that the turnpike companies, theretofore chartered, are authorized to issue bonds for one or both of two distinct objects—"for the purpose of constructing any road authorized by their respective charters, *and* to provide for any present indebtedness which may exist against said companies respectively;" and for the redemption of such bonds, whether issued for the one purpose or the other, or for both, the faith, property, rights and franchises of the companies respectively are pledged; but the section is silent as to any individual responsibility of the corporators.

And the second section of this act provides, not that the stockholders shall be individually liable for the payment of all bonds issued under the authority conferred by the preceding section; not that they shall be liable for the payment of such bonds, whether issued "for the purpose of constructing any road authorized by their charters," *or* "to provide for any then present indebtedness" of the company, or for both purposes, but:

"That the stockholders of any company which shall issue bonds under the authority of this act, *for the purpose of raising money with which to construct the road of such company*, or any part thereof, shall be each individually liable for the payment of such bonds, over and above the stock by such stockholder owned, to a sum at least equal in amount to the stock owned by each, at the time the indebtedness on account of *said* bonds shall be created."

We are of opinion, therefore, that, under the provisions of this act, the individual liability of stockholders is limited to such bonds as may have been issued "for the purpose of constructing" the road authorized by the charter of the company, and does not extend to bonds issued for the purpose of providing for previously existing indebtedness of the company. For the payment of the latter, the holders must look to the faith, property, rights and franchises of the company, as provided and pledged in the first section.

But the petition in this case distinctly shows that the assessment here sought to be enforced was made for the pay-

ment, not only of the bonds issued for the purpose of con-structing the road, but also for the payment of those issued to provide for the previously existing indebtedness of the company. This was unauthorized by law; and the demurrer to the petition was, therefore, properly sustained.

Judgment affirmed.

SUTLIFF, C.J., and PECK, GHOLSON and SCOTT, JJ., concurred.